IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DALE E. MICHAEL, et al.**,

**Plaintiffs,**

**v.**

**PAUL THOMPSON, et al.,**

**Defendants.**                          No. 07-0838-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

Now before the Court is Defendants' motion to dismiss for improper venue (Doc. 9). Specifically, Defendants argue that venue is improper in this district and that venue is proper in the Northern District of Ohio as Plaintiffs' claims are brought pursuant to the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*, therefore, Plaintiffs' claims are subject to the mandatory venue provision, 29 U.S.C. § 412. On December 11, 2007, the Court ordered Plaintiffs to respond to the motion to dismiss by noon on December 13, 2007 (Doc. 13). Plaintiffs have done so (Doc. 17). Based on the following, the Court **DENIES** the motion to dismiss for improper venue, however, accepting the statutory alternative, given the press of time and in the interest of justice, the Court **TRANSFERS** this case to the District Court for the Northern District of Ohio.

On December 3, 2007, Plaintiffs Dale E. Michael, John R. Hasenauer,

Roy G. Arnold and Jimmy Eubanks filed a complaint for declaratory and emergency injunctive relief against Paul Thompson and the United Transportation Union for violations of the Labor Management Reporting and Disclosure Act of 1959, **29 U.S.C. § 101(a)(1) and (2)** ("LMRDA") and the Labor Management Relations Act, **29 U.S.C. § 185** ("LMRA") (Doc. 3). Plaintiffs bring this suit seeking a declaration that a referendum conducted by their union to merge with another union, the Sheet Metal Workers International Association ("SMWIA")[1], is unlawful and that the results are null and void, and to enjoin consummation of the merger on January 1, 2008, by virtue of the fact, *inter alia*, that the membership was not furnished with crucial information with which to evaluate the implications of the merger and were forced to cast their ballots in an informational vacuum. (Doc. 3.) The complaint has two counts: (1) breach of the UTU constitution and the Merger Agreement in violation of the LMRA, 29 U.S.C. § 185; and (2) a violation of equal voting rights in violation of Title I of the LMRDA, 29 U.S.C. § 101(a)(1) and (2). Plaintiffs are rank and file union members of the United Transportation Union ("UTU") (Doc. 3, ¶¶ 3-6).[2] Defendant Paul Thompson is the current president of the UTU and the UTU is a labor organization within the meaning of **29 U.S.C. § 152(5)** and **402(i)** and its headquaters are located in Cleveland, Ohio (Doc. 3, ¶¶ 7-8).

On December 7, 2007, Plaintiffs filed a motion for preliminary

---

[1]SMWIA is based in Washington, D.C.

[2]Michael is an Illinois member of the UTU who resides in Salem, Illinois.

injunction (Docs. 5, 6 & 8).³ That same day, the Court set the matter for hearing on the preliminary injunction for December 17, 2007 (Doc. 7). Thereafter on December 10, 2007, Defendants filed their motion to dismiss for improper venue based on Rule 12(b)(3) and 28 U.S.C. § 1406(a) (Doc. 9). On December 11, 2007, Plaintiffs re-filed their motion for preliminary injunction (Doc. 16). The Court turns now to address the merits of the motion to dismiss for improper venue.

## II. Motion to Dismiss

Defendants move to dismiss based on the grounds that venue is improper in this district pursuant to 28 U.S.C. § 1406(a) and Federal Rule of Civi Procedure 12(b)(3). Rule 12(b)(3) provides that a party may move to dismiss an action when the action is not filed in a proper venue. **Fed.R.Civ.P. 12(b)(3)**. If a court determines that it is not the proper venue for the action the court is required to dismiss the action or "if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." **28 U.S.C. § 1406(a);** *see* ***Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir. 1999)**. 28 U.S.C. § 1406(a) provides:

> "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

**28 U.S.C. § 1406(a)**. The decision to transfer is left to the sound discretion of the

---

³On December 11, 2007, the Clerk of the Court stuck documents 5 & 8 (Doc. 14).

court. ***Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).**

As to venue regarding LMRDA claims, 29 U.S.C. § 412 provides in part:

> Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of the labor organization is located.

**29 U.S.C. § 412**.

Defendants argue that venue is proper only in the Northern District of Ohio as the UTU is headquatered in Cleveland, Ohio and that is where the challenged decisions regarding election procedure were made. Defendants state that "[t]he alleged 'violation' in this case is the timing of the merger ratification vote and the method by which the UTU decided to conduct the vote. The fact that UTU members in judicial districts all over the United States took part in that vote does not create an "alleged violation" in each such district, or indeed, anywhere outside of the Northern District of Ohio." In response, Plaintiffs argue that venue is proper in the Southern District of Illinois as the LMRDA violations occurred within the Southern District "given that the case concerns a national referendum conducted by mail and telephone among UTU members who live within this Court's jurisdiction, as well as elsewhere." (Doc. 17, p. 3.) Plaintiffs further argue:

> As set forth in the Complaint, the proposal to merge the UTU and the Sheet Metal Workers required approval of the entire UTU membership. As a national referendum, the procedure contemplated that each member would exercise his/her voting rights in the jurisdiction of each person's residence, at local meetings, by telephone, email, and publication and distribution of flyers, etc. Under the LMRDA and the UTU Constution, the Union was required to provide each member, by mail, with copies of the relevant documents and voting instructions or

ballots. In their Complaint, plaintiffs allege that the information each member received and upon which each cast his/her vote was misleading, inaccurate and incomplete. This includes information received by members in this District, and votes cast by members in this District.

(Doc. 17, p. 4).

The Court agrees with Defendants and finds the venue is not proper in the Southern District of Illinois.[4] The violations at issue in Plaintiffs' complaint are

---

[4]The following cases cited by Plaintiffs are distinguishable from this case: **_Giordani v. Upholsters International Union of North America_, 403 F.2d 85 (2nd Cir. 1968)**; **_Vestal v. International Brotherhood of Teamsters_, 245 F.Supp. 623 (M.D. Tenn. 1965)**; and **_Shea v. International Brotherhood of Teamsters, AFL-CIO,_ 1994 U.S. Dist. LEXIS 5002 (D.C. Dist. March 15, 1994)**. In **_Vestal_**, the _request_ for a separate charter was initiated within the District Court where the action was brought; defendants required plaintiffs to _submit membership list_ of the Local to the International. The _request_ and _petitions_ for a separate charter were initiated from plaintiff's district; the International sent its _agent into the district_ to actively conduct the referendum. Moreover, the Court stated that to dismiss the action would remove it to an area "far removed from the actual scene of the controversy." Thus, the court concluded that venue was proper because the activities of the defendants had a direct effect and occurred in the judicial districts where plaintiffs instituted their cause of action. In **_Giordani,_** a New York venue was upheld in an action challenging plaintiff's discharge pursuant to a union decision made in Philadelphia. Although the immediate violation complained of was the approval of plaintiff's discharge by the defendant's executive board, which did occur in Philadelphia, the court refused to view that act as the sole determinant of "where the alleged the violation occurred." **403 F.2d. at 87-88**. The court explained:
"We believe that the term "violation" should not be so narrowly construed. The internal deliberations of the Board alone constituted no violation of the Act; rather, the Board's decision is challenged because its purpose and effect were to chastise Giordani for the exercise in New York of what he claims to be his protected rights. See Vestal v. International Brotherhood of Teamsters, etc., 245 F.Supp. 623, 60 LRRM 2156 (M.D. Tenn. 1965). Where, as here, a member charges that his union has interfered with his rights under the Act, that interference must be said to have occurred where it actually took effect upon the member, not where the union determined its plan of action. Moreover, in this case, significant steps in the process leading to Giordani's expulsion were effected within the district. The charges were brought by members of Giordani's local in New York, the hearing on the charge upon which the Board's action was predicated was conducted in New York, and the letter informing Giordani of his expulsion was served upon him in New York."
**_Id._** Lastly, **_Shea_** is distinguishable because Judge Johnson was clearly motivated by her desire to have the case ruled upon by the same judge, in the Southern District of New York, who was presiding over a consent decree between the government and the IBT, on the rationale that the many of the issues in the case on which she was ruling were similar if not identical to the issues Judge Edelstein was presiding over in New York. In doing so, Judge Johnson acknowledged that New York was not the principle headquarters of the union, D.C. was, but found, as the Plaintiffs urge here, that alleged violations were occurring there during voting, as alleged here, as well. She

the procedures adopted to ratify the merger and Defendants' conduct related thereto. Defendants arranged for voting materials to be sent by mail to its members throughout the United States and Canada and the UTU members were afforded the opportunity to vote using a secure telephonic voting process administered by the American Arbitration Association. Defendants have not ordered any particular action be taken in the Southern District of Illinois, nor is this litigation intimately, uniquely or otherwise connected with matters or actions in the Southern District of Illinois, other than the fact that a number of UTU members live in the Southern District of Illinois. It is clear that the alleged violations did not occur in the Southern District of Illinois as contemplated by the authority relied upon by Plaintiffs. Thus, the Court finds that venue is not proper in the Southern District of Illinois.

Alternatively, Plaintiffs urge the Court to exercise "pendent venue" over the LMRDA claim as the Court has proper venue over their LMRA claim. Plaintiffs contend that the general rule on venue existing for each separate cause of action has been eroded by the doctrine of pendent venue. Plaintiffs also contend that case law on pendent venue does not exclude its application where the federal claim to be joined has a specific venue provision. Plaintiffs maintain that this case is appropriate for pendent venue because both of their claims center on the same core of operative facts – defendants' interference with plaintiffs' voting rights. The Court rejects this argument.

---

reasoned, though, that transferring the case to Judge Edelstein, specifically, was in the interest of justice. **Shea, 1994 U.S. Dist. LEXIS 5002 at \* 4**.

In a thorough explanation of how venue relates to jurisdiction, Judge Adelman of the Eastern District of Wisconsin, in a well reasoned and scholarly order, explained the court created doctrine of "pendent venue." **See Pacer Global Logistics, Inc. v. National Passenger Railroad Corp.**, 272 F.Supp. 2d 784, 787-91 (E.D. Wis. 2003)(Adelman, J.).[5] As to the issue regarding special venue statutes, Judge Adelman stated:

> Second, if any of the claims making up the cause of action are governed by a special venue provision of the type that limits venue to specified districts, the cause of action may be brought only in a district specified by such provision. This is so because congressional intent to limit the available districts is clear and cannot be circumvented by claims of pendent venue. Corn, *supra*, at 956; *see also PKWare, Inc.*, 79 F.Supp.2d at 1019 (finding application of doctrine of pendent venue inconsistent with the specific requirements of the statute conferring venue in patent cases). Thus, even treating all of the claims arising out of one set of facts as one cause of action, a court may nevertheless not allow the cause of action to be brought outside the districts provided by Congress. Corn, *supra*, at 956.

**Id. at 790**. Here, the LMRDA has a specific venue provision, **29 U.S.C. § 412**, that must be followed. Thus, pendent venue is not appropriate to the facts of this case.

---

[5]"According to this doctrine, a claim that is not properly venued standing alone can still be heard by a court as long as another properly venued claim arising out of a common nucleus of operative facts is also brought at the same time in the same district. The doctrine developed as an analogy to the concept of supplemental jurisdiction whereby a state law claim that could not otherwise be heard in a federal court would be allowed if attached to a factually similar federal claim. Richard Corn, *Pendent Venue: A Doctrine in Search of a Theory*, 68 U.Chi.L.Rev. 931, 932 (2001). A number of courts have invoked the doctrine of pendent venue to avoid having to dismiss or bifurcate claims that are based on the same underlying facts as properly venued claims." **Id. at 789 (citations omitted).**

### III. Conclusion

Accordingly, the Court **DENIES** Defendants' motion to dismiss for improper venue (Doc. 9).  However, pursuant to **28 U.S.C. § 1406(a)**, the Court **TRANSFERS** this case to the District Court for the Northern District of Ohio.  In light of the impending December 31, 2007 deadline for the court to act, based on the allegations of the complaint, the Clerk of Court here shall immediately **INFORM** the Clerk of Court of the Northern District of Ohio that this case is ready for immediate electronic transfer to the Northern District of Ohio.

**IT IS SO ORDERED.**

Signed this 14th day of December, 2007.

/s/        DavidRHerndon

**Chief Judge**
**United States District Court**